# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

DIANAH WYNTER,

    Plaintiff,

v.

ARCA BIOPHARMA, INC.,
ROBERT E. CONWAY,
LINDA GRAIS,
ANDERS HOVE,
JACOB MA-WEAVER,
JAMES FLYNN,

    Defendants.

---

## COMPLAINT AND JURY DEMAND
## FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

---

Plaintiff, Dianah Wynter ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against ARCA Biopharma, Inc. ("ARCA" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Oruka Therapeutics, Inc., ("Oruka"), through merger vehicle Atlas Merger Sub Corp. ("Merger Sub I") and Atlas Merger Sub II LLC ("Merger Sub II") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Merger Sub I and Merger Sub II are both wholly owned Subsidiaries of ARCA.

2. The terms of the Proposed Transaction were memorialized in a April 3, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, pre-merger ARCA stockholders are expected to own approximately 2.38% of the combined company and pre-merger Oruka stockholders are expected to own approximately 97.62% of the combined company.

3. Thereafter, on May 14, 2024, the Company filed its Registration Statement (the "Registration Statement") on Schedule S-4 with the United States Securities and Exchange Commission (the "SEC").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement with the SEC in an effort to solicit public stockholders such as Plaintiff to vote her ARCA shares in favor of the Proposed Transaction.

6. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ARCA, provided by Company management to the Company's financial advisors Lucid Capital Markets, LLC ("Lucid"), the Special Committee of the Board (the "Special Committee") and the Board; (c) the financial projections for Oruka, provided by the Oruka to Lucid; (d) the data and inputs underlying the liquidation analysis prepared by Company management and provided to the Special Committee, the Board, and Lucid; and (e) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Lucid, and provided to the Special Committee, and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8. Plaintiff is a citizen of California and, at all times relevant hereto, has been an ARCA stockholder.

9. Defendant ARCA, a clinical stage biopharmaceutical company, engages in the development and commercialization of targeted therapies for cardiovascular diseases. ARCA is incorporated in Delaware and has its principal place of business at 10170 Church Ranch Way, Suite 100, Westminster, CO 80021.  Shares of ARCA common stock trade on the NASDAQ stock market under the symbol "ARCA."

10. Defendant Robert E. Conway  ("Conway") has been the chairman of the Company Board of Directors at all relevant times. In addition, Defendant Conway serves as the Chair of the Special Committee.

11. Defendant Linda Grais ("Grais") has been a director of the Company at all relevant times. In addition, Defendant Grais is a member of the Special Committee.

12. Defendant Anders Hove ("Hove") has been a director of the Company at all relevant times. In addition, Defendant Hove is a member of the Special Committee.

13. Defendant Jacob Ma-Weaver ("Ma-Weaver") has been a director of the Company at all relevant times.

14. Defendant James Flynn ("Flynn") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 10 - 14 are collectively referred to as the "Individual Defendants."

16. Non-party Oruka is developing novel biologics designed to set a new standard for the treatment of chronic skin diseases.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20. Defendant ARCA, a clinical stage biopharmaceutical company, engages in the development and commercialization of targeted therapies for cardiovascular diseases.

*The Flawed Sales Process*

21. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Oruka.

22. Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given.

23. Moreover, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

24. The Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Oruka and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners.

25. In addition, the Registration Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

26. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

27. On April 3, 2024, ARCA and Oruka issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Westminster, CO and Waltham, MA**, April 3, 2024 – ARCA biopharma, Inc. (NASDAQ: ABIO) ("ARCA"), and Oruka Therapeutics ("Oruka"), a privately held

biotechnology company developing novel biologics designed to set a new standard for the treatment of chronic skin diseases, including plaque psoriasis, announced today that they have entered into a definitive agreement to combine the companies in an all-stock transaction. The resulting entity will focus on advancing Oruka's pipeline of potentially best-in-class biologics, including ORKA-001 (an IL-23p19 inhibitor) and ORKA-002 (an IL-17A/F inhibitor). Upon completion of the merger, the combined company plans to operate under the name Oruka Therapeutics, Inc. and trade on Nasdaq under the ticker symbol "ORKA".

In support of the merger, Oruka has secured commitments for a $275 million private investment in its common stock and pre-funded warrants to purchase its common stock from a syndicate of healthcare investors led by Fairmount and Venrock Healthcare Capital Partners, with participation from RTW Investments, Access Biotechnology, Commodore Capital, Deep Track Capital, Perceptive Advisors, Blackstone Multi-Asset Investing, Avidity Partners, Great Point Partners LLC, Paradigm BioCapital, Braidwell LP, and Redmile Group, as well as other investors, including multiple large investment management firms. The financing is expected to close immediately prior to completion of the merger. The combined company's cash balance at closing is anticipated to fund Oruka's operations through 2027 and support the advancement of ORKA-001 and ORKA-002 through initial clinical proof-of-concept. In addition, prior to closing of the merger, ARCA expects to declare a cash dividend to the pre-merger ARCA stockholders equal to the amount by which ARCA's net cash exceeds $5 million.

"Our mission at Oruka is to offer people affected with chronic skin diseases the most possible freedom from their condition. We believe that our lead programs, engineered by the world-class team at Paragon, could meaningfully advance the standard of care in psoriasis and related diseases," said Lawrence Klein, PhD, Chief Executive Officer of Oruka. "This merger and significant financing is expected to provide resources to build out our operational capabilities and propel our programs into clinical development with focus and efficiency."

Oruka aims to transform the treatment of plaque psoriasis, psoriatic arthritis, and other dermatologic and inflammatory indications by developing potentially best-in-class, long-acting antibodies against validated targets with critical roles in these diseases. Oruka is the third company founded based on assets generated by Paragon Therapeutics ("Paragon"). Oruka's co-lead programs, ORKA-001 and ORKA-002, were designed utilizing state-of-the-art antibody engineering, including half-life extension, to enable dosing as infrequently as once or twice a year while potentially delivering superior efficacy than the current standard of care. Both programs are expected to enter clinical trials in 2025, with initial pharmacokinetic data for ORKA-001 anticipated as early as the second half of 2025, which could provide important validation of the ability to achieve extended dosing intervals and high antibody exposures. The scientific foundation for Oruka was established in large part by Dr. Andrew Blauvelt, a world-renowned expert in psoriasis and chair of Oruka's Scientific Advisory Board.

"I am excited to support Oruka in their mission to advance the standard of care in plaque psoriasis and other associated diseases," said Dr. Blauvelt, "Over the past 25 years, I've seen the field advance to previously unimagined levels of efficacy, but there is still unmet need as patients continue to seek freedom from their disease. Our recent work in the KNOCKOUT study has demonstrated that stronger IL-23 inhibition can lead to higher response rates, with the potential for continued disease remissions without therapy. Oruka's lead programs are uniquely suited to build upon this work, potentially offering greater efficacy, less frequent dosing, and more durable disease modification than currently available therapies."

"We believe that this combination with Oruka is the best path forward for ARCA stockholders," said Robert E. Conway, Chairman of the Board of Directors of ARCA. "We believe that the expected cash dividend and Oruka's promising pipeline provides the potential for significant value creation for ARCA stockholders in the near- and long-term."

**About the Proposed Transactions**

Under the terms of the merger agreement, the pre-merger ARCA stockholders are expected to own approximately 2.38% of the combined company and the pre-merger Oruka stockholders (inclusive of those investors participating in the pre-closing financing) are expected to own approximately 97.62% of the combined company. The percentage of the combined company that ARCA's stockholders will own as of the close of the merger is subject to adjustment based on the amount of ARCA's net cash at the closing date. ARCA is expected to contribute $5 million to the combined entity and expects to pay a dividend to pre-merger ARCA stockholders of approximately $20 million immediately prior to the close of the merger.

The transaction has received approval by the Board of Directors of both companies and is expected to close in the third quarter of 2024, subject to certain closing conditions, including, among other things, approval by the stockholders of each company, the effectiveness of a registration statement to be filed with the U.S. Securities and Exchange Commission (the "SEC") to register the securities to be issued in connection with the merger, and the satisfaction of customary closing conditions.

The combined company will be named Oruka Therapeutics, Inc. and led by Lawrence Klein, PhD, Oruka's current Chief Executive Officer, who will be joined on Oruka's Board of Directors by Peter Harwin, Managing Member of Fairmount, Samarth Kulkarni, PhD, CEO and Chairman, CRISPR Therapeutics, Cameron Turtle, DPhil, CEO, Spyre Therapeutics, and Carl Dambkowski, MD, CMO, Apogee Therapeutics.

Wedbush PacGrow is serving as strategic advisor and Gibson, Dunn & Crutcher LLP is serving as legal counsel to Oruka. Jefferies, TD Cowen, Leerink Partners, and LifeSci Capital are serving as the placement agents to Oruka. Cooley LLP is

- 9 -

serving as legal counsel to the placement agents. Lucid Capital Markets is serving as financial advisor and Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal counsel to ARCA.

*Potential Conflicts of Interest*

28. The breakdown of the benefits of the deal indicates that ARCA insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ARCA.

29. For example, Company insiders currently own company options, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Beneficial Owner | Shares Beneficially Owned | Percentage Shares Beneficially Owned |
|---|---|---|
| **Directors and Named Executive Officers** | | |
| Michael R. Bristow, M.D., Ph.D.[1] | 254,274 | 1.7% |
| Thomas A. Keuer[2] | 133,521 | * |
| C. Jeffrey Dekker[3] | 97,146 | * |
| Linda Grais, M.D.[4] | 21,895 | * |
| Robert E. Conway[5] | 71,895 | * |
| Anders Hove, M.D.[6] | 21,499 | * |
| Jacob Ma-Weaver[7] | 4,016,952 | 27.7% |
| James Flynn[8] | 8,500 | * |
| **All current directors and executive officers as a group (7 persons)**[9] | 4,371,408 | 29.6% |

| Name | Unvested ARCA Options (#) | Weighted-Average Exercise Price of Unvested ARCA Options ($) | Vested ARCA Options (#) | Weighted-Average Exercise Price of Vested ARCA Options ($) |
|---|---|---|---|---|
| *Executive Officers* | | | | |
| Thomas A. Keuer | 19,443 | 3.48 | 87,931 | 4.95 |
| C. Jeffrey Dekker | 18,828 | 2.90 | 53,872 | 2.86 |
| *Directors* | | | | |
| Linda Grais, M.D. | 4,500 | 1.64 | 20,895 | 6.06 |
| Robert E. Conway | 4,500 | 1.64 | 20,895 | 6.06 |
| Anders Hove | 4,500 | 1.64 | 20,499 | 4.82 |
| Jacob Ma-Weaver | 9,166 | 1.96 | 14,834 | 2.23 |
| James Flynn | 11,166 | 2.05 | 6,834 | 2.17 |

30. In addition, employment agreements with certain ARCA executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Michael R. Bristow[4] | 370,000 | 10,555 | — | 380,555 |
| Thomas A. Keuer | 505,000 | 3,889 | 40,746 | 549,635 |
| C. Jeffrey Dekker | 435,000 | 2,310 | 36,579 | 473,889 |

31. The Registration Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

32. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

33. Thus, while the Proposed Transaction is not in the best interests of ARCA, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

34. On May 14, 2024, the ARCA Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

35. The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

    a. Adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given;

    b. Indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness;

    c.  Whether the confidentiality agreements entered into by the Company with Oruka differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners; and

    d.  Any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

36. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning ARCA and Oruka's Financial Projections*

37. The Registration Statement fails to provide material information concerning financial projections for ARCA provided by ARCA management to the Board and Lucid, financial projections for Oruka provided by Oruka management to the Board and Lucid and were relied upon by Lucid in its analyses. The Registration Statement fails to disclose any management prepared projections for the Company and/ or Oruka.

38. Notably the Registration Statement reveals that as part of its analyses, Lucid reviewed, "Reviewed and analyzed certain internal financial analyses, including the cash burn model over the next year, projections as to cost and expenses and whether concurrent capital raised would sufficiently cover select programs, reports, and other information concerning Oruka prepared by Oruka."

39. Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that ARCA management provided to the Board and Lucid. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

40. With respect to Company Management's *Liquidation Analysis*, the Registration Statement fails to disclose:

   a. The inputs, metrics, and assumptions used to determine ARCA's estimated net cash of $29.65 million as of June 2024; and

   b. The inputs, metrics, and assumptions used to determine the forecasted total for costs and expenses of approximately $7.28 million; including specifically: legals fees, fees payable to ARCA's strategic financial advisor, accounting fees, employee retention bonuses, severance and benefits, insurance expenses, other transaction-related costs, and other liabilities.

41. The Registration Statement fails to provide financial projections for Oruka.

42. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

43. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lucid financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lucid*

44. In the Registration Statement, Lucid describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

45. With respect to the *Selected Initial Public Offering Transactions Analysis*, the Registration Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the total enterprise value of each of the selected precedent transactions IPO companies; and

    b. The inputs, metrics, and assumptions used to determine the range of implied total equity values for Oruka of approximately $177.4 million to $504.2 million.

46. With respect to the *Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the underlying inputs, metrics, and assumptions used to determine the range of implied total equity values for Oruka of approximately $5.3 million to $539.2 million.

47. With respect to the Selected *Precedent M&A Transactions Analysis,* the Registration Statement fails to disclose the following:

      a. The specific date on which each selected transaction was consummated;

      b. The aggregate value of each selected transaction; and

      c. The underlying inputs, metrics, and assumptions used to determine the range of implied total equity values for Oruka of approximately $65 million to $1.0 billion.

48. The Registration Statement fails to disclose any and all Discounted Cash Flow analyses done by Lucid and provided to Company and Oruka, if any.

49. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public ARCA stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

51. Plaintiff repeats all previous allegations as if set forth in full herein.

52. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

53. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

54. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

55. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

58. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

61. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

62.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ARCA's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

63.     The Individual Defendants acted as controlling persons of ARCA within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause ARCA to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled ARCA and all of its employees.  As alleged above, ARCA is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 20, 2024

**BRODSKY & SMITH, LLC**

By: */s/ Marc Ackerman*
Marc L. Ackerman
Two Bala Plaza, Suite 805
333 East City Avenue
Bala Cynwyd, PA 19004
Phone: (610) 667-6200
Fax:   (610) 667-9029
Email: mackerman@brodskysmith.com

*Counsel for Plaintiff*